626 A.2d 52

LOYOLA FEDERAL SAVINGS AND LOAN ASSOCIATION

v.

Jennifer FRANCOIS et al.

No. 38, Sept. Term, 1993.

Court of Appeals of Maryland.

June 15, 1993.

M. Albert Figinski, Carla Stone Witzel Weinberg and Green, Baltimore, and Jay W. Strong, Jr., Towson, for petitioner.

Kevin B. McParland, Bethesda, for respondent.

Submitted to: MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

■ The issue here is a variation on the statutory construction question presented in *Biggus v. Ford Motor Credit Co.*, 328 Md. 188, 613 A.2d 986 (1992). This case involves the requirements of the Retail Installment Sales Act for delivery by the seller to the buyer of an exact copy of the contract signed by the seller.

The buyers, Dale and Jennifer Francois, in June 1987, purchased a new Chevrolet truck from Bill Ayares Chevrolet, Inc. (Ayares) and signed an agreement labeled, "Retail Installment Sale Contract."[1] The third page of the agreement, captioned "Other Important Agreements," included the following provision:

"Governing Law. This Agreement shall be construed under the laws of the state in which the purchase and sale of the goods took place. If such state is Maryland, Subtitle 10 of

---

[1]. The cash price was $16,399.00. Other charges amounted to $1,579.95. With trade-in, the down payment totalled $1,150.00, leaving $16,828.95 as the amount to be financed. The agreement provided for an annual interest rate of 13.35% and required the buyers to make monthly payments for five years of $386.50. The buyers granted a security interest in the vehicle to the seller.

Title 12 of the Commercial Law Article Annotated shall govern this contract."

The contract subsequently was assigned to the petitioner, Loyola Federal Savings & Loan Association (Loyola).

The buyers defaulted, and the truck was repossessed. Its resale resulted in a deficiency. In May 1989, Loyola sued for the deficiency in the District Court of Maryland sitting in Prince George's County.

On April 3, 1991, Ms. Francois filed suit against Loyola and Ayares in the District Court, demanding a refund of all payments made under the agreement.[2] She alleged that she had not received a copy of the installment sales agreement signed by the seller, and she invoked the Retail Installment Sales Act (RISA), Md.Code (1975, 1990 Repl.Vol.), §§ 12–604 and 12–605 of the Commercial Law Article (CL). Those sections provide:

"§ 12–604. **Form of installment sale agreement.**

An installment sale agreement shall be evidenced by an instrument in writing which contains all of the agreements of the parties. It shall be signed by all parties before the seller delivers to the buyer any of the goods covered by the agreement.

"§ 12–605. **Delivery of installment sale agreement and receipt; right to cancel.**

(a) *Delivery of copy required.*—(1) At or before the time the buyer signs an installment sale agreement, the seller shall deliver to him an exact copy of it.

(2) If the seller does not sign the copy, and if, within 15 days after the buyer signs the installment sale agreement, the seller does not deliver to the buyer a copy of it signed by the seller, the installment sale agreement and the instruments signed by the buyer are void without any action by the buyer, and the seller immediately shall refund to the buyer all of his payments and deposits.

---

**2.** Only Ms. Francois filed suit because Mr. Francois had died.

(b) *Right to cancel.*—(1) Until the buyer signs an install-ment sale agreement and receives a copy of it signed by the seller, he has an unconditional right to cancel it and receive immediate refund of all payments and deposits made on account or in contemplation of it.

(2) The buyer's request for the refund operates as cancel-lation of the installment sale agreement.

(c) *Delivery of receipt required.*—Until the buyer signs an installment sale agreement and receives a copy of it signed by the seller, if a payment or deposit is accepted by the seller, he immediately shall deliver to the buyer a receipt for it which clearly states in 12–point type or larger the buyer's rights under subsection (b) of this section.

(d) *Acknowledgment of delivery.*—An acknowledgment of delivery of a copy of an installment sale agreement shall be printed in 12–point type or larger, and, if the acknowledg-ment is contained in the agreement, it shall be printed immediately below the signature to the agreement and independently signed."

The cases were consolidated for trial. Ayares was dis-missed with prejudice.

The District Court concluded that RISA § 12–605 applied, notwithstanding the express election in the contract of CL Title 12, Subtitle 10, "Credit Grantor Closed End Credit Provisions" (CLEC), as the governing statute. The District Court found that the copy of the contract delivered to the buyers was not signed by the seller. That court apparently then held that Loyola, under RISA § 12–626(e)(4)(ii), was not entitled to a deficiency judgment ("[T]he buyer is liable for the deficiency if … [t]he holder has complied with all require-ments of [RISA].").

Both parties appealed to the Circuit Court for Prince George's County.[3] After oral argument but before the circuit

---

3. The District Court also denied the claim for refund by Ms. Francois. On her appeal the circuit court affirmed the District Court. There is no cross-petition for certiorari by Ms. Francois.

court's decision, we decided *Biggus*. Further arguments were held before the circuit court. Loyola submitted, *inter alia,* that the seller-signature requirement in RISA § 12–605 was a disclosure requirement that was superseded by CLEC § 12–1014(c). CLEC § 12–1014(c) provides:

"Notwithstanding any provisions of this title, a loan under this subtitle is subject only to the disclosure requirements of this subtitle, and, to the extent applicable, of the federal Truth In Lending Act and regulations promulgated thereunder."

The circuit court affirmed, applying the following rationale.

"RISA lists in detail exactly what must be contained in a retail installment sales agreement. Included on that list is a requirement that the seller's signature be on the contract. CLEC is primarily concerned with extensions of credit and restrictions on the rates of interest which may be charged therefore, and is completely silent as to what must be contained in a contract which falls under that subtitle. There is no reason why the CLEC and RISA cannot be read together and applied consistently to the facts in this case. Therefore, even though the contract between the parties in this case made an election expressly applying Subtitle 10 as the governing credit law, the provisions of Subtitle 6 also apply to the agreement."

Loyola petitioned for certiorari. By order filed today we granted that petition, and we summarily reverse. The seller-signature requirements in RISA §§ 12–604 and 12–605 are disclosure requirements expressly superseded by CLEC. *See* CLEC § 12–1014(c); *Biggus,* 328 Md. at 199, 202–03, 210 n. 9, 613 A.2d at 992, 994, 997 n. 9.

One issue in *Biggus* concerned the absence from the contract there involved of the RISA bold-type notice to buyer. *Biggus* held that

"[t]he RISA § 12–606(c)(2) mandatory notice to buyer, which is omitted in the Ford Credit contract form, is a disclosure provision. The credit grantors, by having elected CLEC, did not violate § 12–606(c)(2) because CLEC, per

§ 12–1014(c), makes CLEC disclosures the 'only' state law disclosures applicable to a CLEC transaction. Even though the transactions fall within the definition of RISA contracts, RISA mandates concerning disclosures for RISA contracts are expressly superseded by CLEC, as a result of the election of CLEC."

328 Md. at 202–03, 613 A.2d at 994.

Listed first among the required contents of the notice to buyer under RISA § 12–606(c)(2) is the following: "You are entitled to a copy of this agreement at the time you sign it." Inasmuch as the notice to buyer is a disclosure requirement of RISA, superseded by a CLEC election, the provisions of §§ 12–604 and 12–605 of RISA that mandate the delivery of the seller-signed agreement are, *a fortiori*, disclosure requirements. The written agreement is the physical vehicle which in printed language conveys all of the RISA required disclosures.

This conclusion is made even more clear by part VI of the *Biggus* opinion. There we addressed a number of the arguments advanced by the consumers to challenge the efficacy of the seller's CLEC election. The contract in *Biggus* contained an acknowledgment of receipt by the buyer of a copy of the contract. Such an acknowledgment is required by RISA § 12–605(d), but CLEC does not directly address the subject. The consumers in *Biggus* argued that including that acknowledgment indicated that the credit grantor treated the transaction as governed by RISA, despite the express election of CLEC. We pointed out that the acknowledgment was not inconsistent with CLEC and, therefore, no basis existed on that score for concluding that the credit grantor, in legal effect, had elected to follow RISA. *Biggus*, 328 Md. at 210, 613 A.2d at 997. Phrased another way, a credit grantor who elects CLEC does not nullify the election by including in the CLEC contract a non-contradictory provision required by RISA.

Then, in note 9 to the *Biggus* opinion, we gave guidance, by *dicta*, on the kind of issue that has arisen in the present case. *See id.* at 210 n. 9, 613 A.2d at 997 n. 9. We said:

"In the Ford Credit form the acknowledgment is not printed below the signature and is not independently signed. Petitioners make no issue of this. Even if § 12–605(d) is a mandatory disclosure obligation in contracts governed by RISA, where, as here, [CLEC] has been elected, the disclosure requirements of RISA are expressly superseded. § 12–1014(c)."

*Id.* Inasmuch as acknowledgment of receipt of the seller-signed contract is a disclosure requirement of RISA, superseded by a CLEC election, the provisions of §§ 12–604 and 12–605 of RISA that mandate the delivery of the seller-signed agreement are, *a fortiori,* disclosure requirements. Again, the written agreement is the physical vehicle which in printed language conveys all of the RISA required disclosures.

*Biggus* pointed out the similarity in legal effect between CLEC § 12–1014(c) relating to disclosure requirements and CLEC § 12–1013(a) relating to interest. Where CLEC effectively has been elected, its provisions relating to disclosure and to interest expressly supersede or preempt other disclosure and interest provisions of Maryland law. *Id.* at 199, 613 A.2d at 992. We further held in *Biggus* that the provisions of CLEC relating to repossession created a system that was complete in itself and that was intended by the General Assembly to be applied independently of RISA. *Id.* at 208, 613 A.2d at 996. The resale provisions of CLEC are analogous to preemption by occupation of the field, as contrasted with express preemption.

Against the background of *Biggus,* the circuit court in this case erred in at least two aspects. The circuit court reasoned that CLEC "is completely silent as to what must be contained in a contract which falls under that subtitle." A legislative purpose in enacting CLEC was to enable Maryland closed end credit grantors that elect CLEC to satisfy consumer credit disclosure obligations by complying only with "the disclosure requirements of [CLEC], and, to the extent applicable, of the federal Truth In Lending Act and regulations promulgated thereunder." CLEC § 12–1014(c). Under federal Regulation Z the grantor of closed end credit must make the required

disclosures "in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1) (1993). Further, the content of the disclosures is federally regulated, including a requirement that the consumer be informed of "[t]he identity of the creditor making the disclosures." *Id.* § 226.18(a). Ms. Francois does not contend in this case that any disclosure provision of CLEC or of Regulation Z was violated. Inasmuch as CLEC was effectively elected in this case, compliance with CLEC and with Regulation Z was all that was required. Compliance with RISA disclosures was not additionally required.

■ From what the circuit court perceived as the silence of CLEC on disclosures with respect to contract content, the circuit court proceeded to an analysis akin to that of preemption by conflict. But, as we have pointed out above, in the area of disclosures the election of CLEC expressly preempts other state law disclosure requirements, including those of RISA, whether they are consistent or inconsistent with CLEC.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. COSTS TO BE PAID BY THE RESPONDENT, JENNIFER FRANCOIS.*